Argued and submitted February 9, reversed May 11, 1981

In the Matter of the Compensation of
Ray Brown, Claimant.

BROWN,
*Petitioner,*

*v.*

JELD-WEN, INC.,
*Respondent.*

(No. 79-2895, CA 19235)

627 P2d 1291

Rolf Olson, Salem, argued the cause for petitioner. With him on the brief was Olson, Hittle, Gardner & Evans, Salem.

Brian L. Pocock, Medford, argued the cause for respondent. With him on the brief was Cowling, Heysell & Pocock, Medford.

Before Richardson, Presiding Judge, and Thornton and Van Hoomissen, Judges.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

In this workers' compensation case, the claim was accepted and benefits were paid. After the claim was closed claimant's request that it be reopened was denied.

Thereafter, claimant requested a hearing on the issues of his entitlement to additional benefits, penalties and attorney fees for resistance or delay, or, in the alternative, on the extent of permanent disability. ORS 656.283. Finding the claim had been prematurely closed, a referee ordered the claim reopened and that claimant be paid an additional 25 percent as penalty and $950 attorney fees. The employer requested review by the Workers' Compensation Board. ORS 656.295. On *de novo* review, a majority of the Board reversed the referee and restored and affirmed the employer's denial of reopening and the closing order. Claimant seeks judicial review of the Board's order. ORS 656.298.

The issue is whether the claim should have been reopened, and, if so, whether claimant is entitled to penalties and attorney fees. We review *de novo,* ORS 656.298(6); *James v. SAIF,* 290 Or 343, 351, 624 P2d 565 (1981), reverse and reinstate the referee's order.

The facts may be summarized as follows: Claimant sustained a back injury in October, 1977, while lifting lumber. He was examined by his family physician, who diagnosed his problem as a job-related lumbar sprain. The claim was accepted.

Claimant continued under treatment until July, 1978, when he was examined by Dr. Campagna, a neurologist, who recommended that he be hospitalized for pelvic traction, EMG, and myelography. He was hospitalized, underwent testing including the myelography, and was discharged. In August, 1978, he returned to Dr. Campagna, complaining of severe back pain. Dr. Campagna found "the patient appears in severe pain" and "is not capable of work" and ordered claimant hospitalized "for control of pain." He was readmitted to the hospital and was treated with traction, bed rest and analgesics. In November, 1978, Dr. Campagna reported to the employer that "[t]he present diagnosis * * * is lumbar sprain. Surgery has not been considered. He is being treated conservatively and should be able

to return to work on 1/2/79." On January 18, 1979, Dr. Campagna advised the employer the claim could be closed as of December 8, 1978. On the basis of the doctor's reports that claimant's condition was medically stationary and that the claim could be closed as of December 8, 1978, the Determination Order was issued February 8, 1979.[1]

On January 22, 1979, Dr. Campagna directed a supplemental report to the employer indicating: "[Claimant] returns to the office continuing to have total spine pain. He is not working. * * * Physical examination reveals [he] has guarding of the neck and low back muscles. The deep tendon reflexes are moderately hypoactive bilaterally. * * * [His] condition is stationary. There is no neurosurgical treatment indicated. He should be evaluated by orthopedic consultant." On February 2, 1979, claimant told Dr. Campagna he had returned to work but was unable to tolerate the pain. Dr. Campagna notified the employer and scheduled claimant for rehospitalization on February 4, 1979, for orthopedic consultation. While hospitalized, claimant was treated with traction and physical therapy, and another myelogram was performed.

On March 21, 1979, Dr. Campagna found claimant's back motions were "limited to 50 percent normal range." He recommended evaluation at Callahan Center. Claimant then asked the employer to reopen his claim. The employer refused and denied further benefits. In June, 1979, Dr. Campagna reexamined claimant and found him

---

[1] At the time the Evaluation Division considered closure, it apparently was unaware of Dr. Campagna's supplemental reports to employer, dated January 22, 1979, and February 2, 1979.

ORS 656.268(2) and (3) provide:

"(2) When the injured worker's condition resulting from a disabling injury has become medically stationary, * * * the State Accident Insurance Fund Corporation or direct responsibility employer shall so notify the Evaluation Division, the worker, and contributing employer, if any, and request the claim be examined and further compensation, if any, is determined. *A copy of all medical reports * * * necessary to make such determination also shall be furnished to the Evaluation Division * * *.*

"(3) *When the medical reports indicate* to the insurer or self-insured employer *that the worker's condition has become medically stationary* and the self-insured employer or the employer's insurer decides that the claim is nondisabling or is disabling but without permanent disability, *the claim may be closed, * * *.*" (Emphasis added.)

incapable of regular work. He recommended he be evaluated at the University of Oregon Medical School. Claimant was not evaluated or treated at either institution because his claim was not reopened. In July, 1979, Dr. Campagna advised employer's attorney that claimant's condition had "remained essentially unchanged throughout this period of time which I have treated him." Dr. Campagna reexamined claimant in August, 1979, and finding no essential change, he again recommended evaluation at Callahan Center. In October, 1979, Dr. Campagna opined in a letter to claimant's attorney that his chronic lumbar sprain was related to his industrial injury.

Finding that the February, 1979, closure was premature, the referee ordered the claim reopened.[2] The

---

[2] Based upon this record, the referee reasoned:

"The situation appears somewhat obvious. The physicians discuss herniated nucleus pulposus, and lumbar sprain, but recommended no operative treatment, seem to vacillate in their opinions as to whether or not there are valid complaints existing, and recommend that claimant be evaluated elsewhere. Although released for work on several different occasions, the claimant has adamantly refused to return to work, alleging that he remains completely disabled by his low back pain.

"On the basis on Dr. Campagna's reports, the claim must be reopened as of February 4, 1979. Dr. Campagna stated that the claimant was admitted to the hospital 'for *treatment* of low back pain.' In his letter to Mr. Olson dated October 25, 1979, Dr. Campagna connects the chronic lumbar sprain, apparently still existing, to the industrial injury of October 19, 1977. (Emphasis in original.)

"The Workers' Compensation Board has held that when compensation for temporary total disability is paid, it is required that the claim be reopened and cannot be unilaterally closed by the carrier or employer, without being resubmitted to the Evaluation Division (John R. Daniel, WCB 79-2521).

"ORS 656.273(3) provides that a physician's report indicating a need for further medical services is a claim for aggravation. While a Determination Order can be appealed anytime during the first year after its publication (ORS 656.268(5)) there is nothing to prohibit a claim for aggravation being filed within that one year, in lieu of appealing the Determination Order.

"In this particular case, however, the unique situation exists where the Determination Order had not yet been published on the date that Dr. Campagna had admitted claimant to the hospital for further 'treatments'. The claimant was admitted February 4, 1979, and the Determination Order was not published until February 8, 1979. Accordingly, although the Determination Order was properly issued with the information then available to the Evaluation Division, to wit, Dr. Campagna's earlier report indicating a December 8, 1978 closing date, it must now be set aside as representing a *premature closure* of this claim."

referee also determined the employer's denial of reopening was arbitrary and improper.[3]

In this court, claimant argues Dr. Campagna's February 2, 1979, letter containing notification that he was being hospitalized for orthopedic consultation indicated a need for further medical services, mandating a reopening of the claim. Alternatively, claimant argues Dr. Campagna's letter constituted a valid claim for aggravation which employer arbitrarily and improperly denied. He argues that because the Evaluation Division failed to consider Dr. Campagna's letter, the Determination Order resulted in a premature claim closure. Employer contends this is neither a premature closure nor an aggravation claim and that the claim was properly closed because claimant was then medically stationary. Employer contends further that evidence claimant subsequently underwent conservative medical care and treatment does not establish a basis upon which the claim should have been reopened.

■     Dr. Campagna's February 2, 1979, letter to the employer indicating that the claimant was being hospitalized for orthopedic consultation, together with Dr. Campagna's supplemental report to the employer dated March 14, 1979, enclosing a copy of the hospital discharge summary,[4] satisfies us that the claimant was not "medically stationary"[5] at the time his claim was closed. Closure was therefore premature. ORS 656.268(1).[6]

[3] The referee found:

"The employer's arbitrary decision to terminate temporary disability was improper. If the letter from the employer to claimant dated March 27, 1979 purports to be a letter of denial, it does not conform to the statutory requirements (ORS 656.262(6))."

The employer's denial letter failed to inform claimant of his hearing rights under ORS 656.283.

[4] The Providence Hospital discharge summary states in part:

"This 42 year old white male was admitted for treatment of low back pain. He was treated with traction and therapy. * * *"

[5] ORS 656.005(21) provides:

"(21) 'Medically stationary' means that no further material improvement would reasonably be expected from medical treatment, or the passage of time."

*See also Dimitroff v. State Ind. Acc. Com.,* 209 Or 316, 333, 306 P2d 398 (1957); *Pratt v. SAIF,* 29 Or App 255, 258, 562 P2d 1242 (1977).

[6] ORS 656.268(1) provides:

■ We agree with the referee that penalties are appropriate here, ORS 656.262(8), and that the employer should pay claimant's reasonable attorney fees. ORS 656.382. *See Vandehey v. Pumilite Glass & Building Co.,* 35 Or App 187, 580 P2d 1068 (1978); *Smith v. Amalgamated Sugar Co.,* 25 Or App 243, 548 P2d 1329 (1976). The amounts ordered by the referee are reasonable under the facts of the case.

The order of the referee is reinstated.

Reversed.

---

"(1) One purpose of this chapter is to restore the injured worker as soon as possible and as near as possible to a condition of self support and maintenance as an able-bodied worker. *Claims shall not be closed nor temporary disability compensation terminated if the worker's condition has not become medically stationary * * *.*" (Emphasis added.)